IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION


JAMES JANIAS YOUNG,                    :

        Plaintiff,                     :

vs.                                    :   CIVIL ACTION 05-0744-KD-M

JACKIE BRIDGEFORTH, et al.,            :

        Defendants.                    :


<u>REPORT AND RECOMMENDATION</u>


    Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a Complaint under 42 U.S.C. § 1983.  This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4).  It is recommended that this action be dismissed with prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) because Plaintiff's claims are either frivolous or fail to state a claim upon which relief may be granted.

I.  <u>Complaint (Doc. 1)</u>.

    Plaintiff filed a § 1983 Complaint against Jackie Bridgeforth, a detective with The Child Advocacy Center; Kimberly Pettaway, Supervisor of Child Services with the Department of Human Resources (hereinafter "DHR"); Monica Washington, a caseworker for DHR; and Steve Giardini, Assistant District Attorney for Mobile County, Alabama.  The Complaint's allegations

lack clarity due to spelling errors and to the unusual nature of the claims. The following is a description of the allegations as the Court is able to discern them.

Plaintiff begins by stating that his Complaint is against DHR for entrapping him by leaving children with him "after not applying an appropriate background check." Plaintiff complains that several times he took the children in his care to DHR for placement in foster care, but DHR would not remove them from his custody and would not conduct a background check on him. However, in 1999, DHR investigated him and, then along with Defendant Bridgeforth, it investigated him again in 2002. He was placed on DHR's Central Registry.

Then, in 2004, Defendant Washington left Donta, Jermain, Shane, Breanna, Terikia, and Tyteannce Felts and William Tricky in Plaintiff's home. DHR would not remove the children so Plaintiff found a place for the children to stay, except for three children. Even after Plaintiff told Defendant Washington that he suffers from many sicknesses and mental disorders, and after Defendant Washington examined Plaintiff's criminal history, DHR and Defendant Bridgeforth allowed the children to stay. On July 4, 2004, Plaintiff was arrested for sex crimes that occurred in 2003 based on DHR's investigation.

After Plaintiff pleaded guilty to sexual abuse, second-degree, on May 9, 2005, he was arrested as a result of an

2

investigation that found DHR and others knowingly left children in his care.  On that same date, DHR, The Child Advocacy Center, and Defendant Bridgeforth searched his "home and took pictures without a search warrant."

Plaintiff further claims that on May 9, 2005, Defendants Bridgeforth and Pettaway interrogated him and that between June 20 and July 20, he was questioned by DHR and The Child Advocacy Center.  During the questioning, he was on medication and he told them he was not mentally focused because of it.  He claims that he was manipulated into talking at these times despite his requests for an attorney or his mental health advisor.  On June 10, 2005, Defendants Giardini and Bridgeforth informed Judge McKnight that Plaintiff passed "HID" (which the Court presumes to be the HIV virus) to each child with whom Plaintiff had a physical encounter.  The newspaper printed this information allegedly before investigating the facts.  And, as a result, the judge gave Plaintiff a $1 million bond for one charge of sodomy, first-degree, which typically carries a bond of $3,000 to $40,000.  Defendant Giardini also allegedly defamed Plaintiff, with Defendant Bridgeforth allowing it to occur; referred to Plaintiff as a menace to society and a monster; and violated the Medical Privacy Act in a private court session.

Plaintiff maintains that DHR should have done its job "and not place [Plaintiff] as well as children in danger of each other

out of danger." As a result, Plaintiff claims that he lost his car, job, self-respect, and control of his mental and health problems, and that he and his family are now in danger.

Plaintiff claims Defendant Pettaway, as a supervisor, had many opportunities not to place children in Plaintiff's care, particularly after all the investigations. And Defendant Washington's refusal to place children in foster care and to follow protocol placed Plaintiff at risk for future incarceration.

For relief, Plaintiff seeks "emotional," "mental," and "physical" damages, punitive damages, and a retraction of statements by the media.

II.   Standards of Review Under 28 U.S.C. § 1915(e)(2)(B).

Because Plaintiff is proceeding *in forma pauperis*, the Court has reviewed Plaintiff's Complaint under 28 U.S.C. § 1915(e)(2)(B).[1] Under § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32 (1989). A claim is frivolous as a matter of law

_____

[1]The predecessor to this section is 28 U.S.C. § 1915(d). Even though Congress made many substantive changes to § 1915(d) when it enacted 28 U.S.C. § 1915(b)(2)(B), the frivolity and the failure to state a claim analysis contained in *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989), was unaltered. *Bilal v. Driver,* 251 F.3d 1346, 1349 (11th Cir.), *cert. denied,* 534 U.S. 1044 (2001); *Brown v. Bargery*, 207 F.3d 863, 866 n.4 (6th Cir. 2000). However, dismissal under § 1915(e)(2)(B) is now mandatory. *Bilal,* 251 F.3d at 1348-49.

where, *inter alia*, the defendants are immune from suit, *id.* at 327, 109 S.Ct. at 1833, the claim seeks to enforce a right that clearly does not exist. *Id.* Judges are accorded "not only the authority to dismiss [as frivolous] a claim based on indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S.Ct. at 1833.  Moreover, a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957)); *see Mitchell v. Farcass,* 112 F.3d 1483, 1490 (11th Cir. 1997) (noting that § 1915(e)(2)(B)(ii)'s language tracks the language of Fed.R.Civ.P. 12(b)(6)).  Dismissal for failure to state a claim is also warranted when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint. *Jones v. Bock*, ___ U.S. ___, ___, 127 S.Ct. 910, 920-21 (2007).

III.  <u>Discussion</u>.

    A. <u>Defendant Giardini</u>.

    Plaintiff alleges that Defendants Giardini and Bridgeforth

told Judge McKnight that Plaintiff passed the HIV virus to each
child with whom he had a physical encounter, which caused
Plaintiff's bond to be set at $1 million.  Additionally, during
June, 2005, Defendant Giardini allegedly referred to Plaintiff as
a monster and menace before Judge McKnight, and then in a private
court session, he violated the Medical Privacy Act.

A prosecutor is entitled to absolute prosecutorial immunity
from damages in a § 1983 action for acts associated with the
judicial process, in particular, those taken in initiating a
prosecution and in presenting the State's case.  *Imbler v.
Pachtman*, 424 U.S. 409, 431, 96 S.Ct. 984, 995 (1976); *Wahl v.
McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985); *Fullman v.
Graddick*, 739 F.2d 553, 558-59 (11th Cir. 1984).  Absolute
prosecutorial immunity "typically is stretched far into the case
and even into its afterlife." *Neville v. Classic Gardens*, 141 F.
Supp.2d 1377, 1383 (S.D. Ga. 2001) (citing *Allen v. Thompson,* 815
F.2d 1433, 1434 (11th Cir. 1987) (finding a prosecutor was
entitled to absolute prosecutorial immunity for writing an
allegedly malicious letter to the Parole Commission)).
"Generally, prosecutorial actions that occur in court are
shielded by absolute immunity, *see Burns,* 500 U.S. at 491-92, 111
S.Ct. at 1942; *Imbler,* 424 U.S. at 430-31, 96 S.Ct. at 995, even
where the prosecutor knowingly proffers perjured testimony or
fabricated exhibits, *Rowe,* 279 F.3d at 1279-80." *Rivera v. Leal,*

6

359 F.3d 1350, 1354 (11th Cir. 2004).

In the present action, Plaintiff's claim against Defendant Giardini is based on statements made during some of the earlier court proceedings in the prosecution of the criminal action against Plaintiff.  Prosecutorial immunity, therefore, covers these acts by Defendant Girandini.  *Jones v. Clark,* 2:05-CV-005-F-WO, 2005 WL 1126778 at, *1 (M.D. Ala. May 4, 2005) (unpublished) (finding the prosecutor was entitled to absolute prosecutorial immunity because the request for an increase in bail is a component of the initiation and presentation of a prosecution).

This immunity applies even to the statement that Defendant Giardini allegedly violated the Medical Privacy Act during a private hearing.  Notwithstanding this finding of immunity's coverage, the Court was not able to find the Medical Privacy Act.  Whereas, there is The Privacy Act of 1974, which applies only to federal agencies, 28 U.S.C. § 552(e).  The Privacy Act, however, provides exceptions for the disclosure of protected information for criminal law enforcement activities and "to a person pursuant to a showing of compelling circumstances affecting the health or safety or an individual."  28 U.S.C. § 552a(b)(7)&(8).  A federal agency is not involved in this action and, therefore, this Act has no application.  Accordingly, Plaintiff's damages claim against Defendant Giardini is frivolous as a matter of law.

7

B. Defamation Claims.

Plaintiff claims that Defendant Giardini defamed him in these court proceedings with Defendant Bridgeforth allowing it to occur. A prosecutor is likewise entitled to absolute prosecutorial immunity for "defamatory statements made during, and related to, judicial proceedings." *Buckley v. Fitzsimmons,* 509 U.S. 259, 270, 113 S.Ct. 2606, 2614 (1993). Therefore, Defendant Giardini is entitled to absolute prosecutorial immunity from damages for his allegedly defamatory statements.

Plaintiff also claims Defendant Bridgeforth defamed him by allowing Defendant Giardini to defame Plaintiff. Unlike the situation of excessive force, which ordinarily requires an observing state official to intervene and take reasonable steps in order to prevent an injury from being exacerbated in order to avoid liability under § 1983, this situation is different. *See Skritch v. Thornton,* 280 F.3d 1295, 1302 (11th Cir. 2002) ("[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." (Citation omitted)). Defendant Bridgeforth cannot prevent the defamation from occurring. Once the allegedly false remarks have been spoken, the injury has occurred. Plaintiff has not elaborated on how intervention by Defendant Bridgeforth could have negated the injury. And the Court is not aware of case law

8

requiring intervention in a defamation situation, as compared to an excessive force situation.  Thus, the undersigned is not able to find a claim of constitutional magnitude based on a failure to intervene by Defendant Bridgeforth.  *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1794, (1991) (holding that defamation is not a constitutional deprivation but "is a tort actionable under the law of most States");[2] *Paul v. Davis,* 424 U.S. 693, 712, 96 S.Ct. 1155, 1165 (1976) (holding that an interest in reputation is protected by state tort law, and is not a liberty or property interest protected by the Due Process Clause.)[3] Inasmuch as there is not a violation of a constitutional right by Defendant Bridgeforth, Plaintiff's failure-to-intervene claim against him is frivolous.  *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913 (1981) (holding that § 1983 provides a

---

[2]In *Siegert,* a psychologist sued his former supervisor for sending a defamatory reference to his prospective employer.  The Supreme Court found that no constitutional right was violated because defamation is a state tort claim and that the alleged defamation did not occur during the termination of employment. *Id.* at 227, 233, 111 S.Ct. at 1791, 1794.

[3]In *Paul*, the plaintiff's picture was in a police flyer containing known shoplifters which was circulated to store owners.  Later, the shoplifting charges against plaintiff were dismissed.  Plaintiff sued because he feared that he would be arrested for shoplifting if he entered a store and that his employment opportunities would be impaired in the future, as evidenced by his current employer discussing the flyer with him and warning him that it must not happen again.  The Supreme Court held that plaintiff's defamation claim did not state a claim under section 1983 because there is no liberty or property interest in one's reputation.  *Id.* at 694, 712, 96 S.Ct. at 1157, 1166.

remedy for a violation "of rights, privileges, or immunities secured by the Constitution or laws of the United States"), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-31, 106 S.Ct. 662, 664 (1986).

C. Remaining Claims Against Defendants Bridgeforth, Pettaway, and Washington.

The chief remaining claims are against Defendants Bridgeforth, Pettaway, and Washington for their refusal to remove children from Plaintiff's home even after Plaintiff requested their removal and after these Defendants knew that he had mental and physical problems. In order to state a claim under 42 U.S.C. § 1983, a plaintiff must establish that a state actor's conduct deprived him "of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. at 535, 101 S.Ct. at 1913. Based on these allegations, the undersigned is unable to discern a constitutional right of Plaintiff that was violated by these Defendants, and an examination of case law did not yield a case to support Plaintiff's position. Rather, to find a constitutional right of Plaintiff based on these allegations is incomprehensible. Accordingly, the undersigned finds that Plaintiff's claims against Defendants Bridgeforth, Pettaway, and Washington are frivolous as a matter of law.[4] In addition, Plaintiff's simple

---

[4]The Court is foregoing a discussion based on the statute of limitations due to the disposition of these claims. However, the

claim against Defendant Bridgeforth for searching his house without a warrant, which lacks any other information, fails to state a claim upon which relief can be granted.

IV.  <u>Conclusion</u>.

Based upon the foregoing reasons, it is recommended that this action be dismissed without prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) because Plaintiff's claims are either frivolous or fail to state a claim upon which relief may be granted.

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS<br>
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION<br>
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.  **<u>Objection</u>**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time

---

statute of limitations would provide an alternate basis for dismissal of those claims that accrued more than two years prior to filing the Complaint.  *Lufkin v. McCallum*, 956 F.2d 1104, 1106, 1108 (11th Cir.), *cert. denied*, 506 U.S. 917 (1992); Ala. Code § 6-2-38(l).

11

is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.  **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this 17th day of April, 2007.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE